IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MATTEO BRUNOZZI**,
an individual,

                Plaintiff,

        v.

**CABLE COMMUNICATIONS, INC.,**
a foreign corporation,

                Defendant.

Lead Case No. 3:14-cv-01128-MO
No. 3:14-cv-01131-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Plaintiff Matteo Brunozzi and Defendant Cable Communications, Inc. ("CCI") have filed competing motions for summary judgment. Mr. Brunozzi's Motion for Partial Summary Judgment [41] seeks summary judgment regarding his Fair Labor Standards Act ("FLSA") claim and his ORS 652.140 claim for failure to pay all wages at the end of employment. CCI's Motion for Summary Judgment [32] seeks summary judgment regarding all of Mr. Brunozzi's claims. For the reasons set forth below, Mr. Brunozzi's Motion for Partial Summary Judgment [41] is DENIED and CCI's Motion for Summary Judgment [32] is GRANTED.

1 – OPINION AND ORDER

**BACKGROUND**

CCI is a cable installation company. It employs technicians to install cable television and internet services for Comcast. Mr. Brunozzi applied for a position with CCI on or about October 25, 2013. *Deposition of Matteo Brunozzi ("Brunozzi Depo.")*, 12:12–22. CCI hired Plaintiff on or about November 1, 2013, and Plaintiff began working for CCI on or about November 19, 2013. *VanNorstrand Decl.*, ¶ 2.

At the start of his employment, Mr. Brunozzi was provided with a document that specifically explained how technicians were paid after they completed their hourly paid training program. This document explains that for each task the technician performs during the week there is a dollar value assigned to it. At the end of the week all the task values are added up to get to a total dollar amount – the "Piece Rate Total." Then it is determined whether the employee performed any work in excess of 40 hours during the pay period. If so, the total amount of hours worked is divided into the Piece Rate Total to determine the average hourly rate. The technician is then paid a "Piece Rate OT Premium" on that rate for all hours over 40. The Piece Rate Total is then divided by 60 and multiplied by 70 and then the Piece Rate Total is subtracted back out of this number to come up with a total amount available for the "Production Bonus." If an employee was paid overtime for that week, that amount is also subtracted from the preliminary Production Bonus calculation. At that point, a Production Bonus is finalized and paid to the employee. If the employee worked overtime that week, then they are also paid an Overtime Premium component on the Production Bonus. This is all explained in the Technician Pay Rate Program given to Plaintiff, which he signed stating that he read it, had a chance to ask questions to his satisfaction, and understood how it worked.

After the hourly paid training program, technicians, such as Mr. Brunozzi, fill out daily work sheets ("Daily Sheets") to indicate how many hours they worked and which tasks they

performed. Each day Mr. Brunozzi filled out one of these sheets and signed it stating "I hereby certify that the tasks completed, mileage driven, and hours worked as indicated are true and complete. I have received all rest breaks and meal periods to which I was entitled." Mr. Brunozzi specifically testified at his deposition that he filled out these Daily Sheets truthfully every day and that he believed it was fair for CCI to rely on his representations as to the information he provided. At the end of each week, Mr. Brunozzi would be given a "Weekly Payroll Report" showing the hours he worked and the amounts, including overtime that CCI calculated was due to him based on the work he performed. It was from these sheets that CCI would cut the checks to employees.

Mr. Brunozzi was scheduled to work on Saturday, April 5, 2014. *VanNorstrand Decl.*, ¶ 3. Mr. Brunozzi failed to show for work that day. *Id*. Just two days prior, Mr. VanNorstrand held a meeting with all Portland CCI employees and made it clear that failure to show up for work could result in termination. *Id*. at ¶ 5; *see also Brunozzi Depo.*, 70:3-17. When Mr. Brunozzi returned to work on April 7, after missing his April 5 shift, Mr. VanNorstrand terminated Mr. Brunozzi's employment. *VanNorstrand Decl.*, at ¶ 6. Mr. Brunozzi alleges that he made multiple complaints to his supervisors in the weeks before he was fired concerning CCI's failure to pay overtime, and that he specifically objected to working on April 5 unless he was properly paid all his overtime amounts for his overtime hours worked.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, and other documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). If the movant shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond by "citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989).

## DISCUSSION

### I. Wage and Overtime Claims

The parties each seek summary judgment in their favor regarding Mr. Brunozzi's wage and overtime claims. Mr. Brunozzi argues that CCI's wage scheme violates the Oregon state law overtime regulations and the FLSA through a bonus structure calculated by subtracting overtime wages. Mr. Brunozzi further argues that these overtime violations resulted in a violation of ORS 652.140 because he was not paid all the wages he was due at the time of his termination. CCI argues that it fully complied with the requirements of Oregon law and the FLSA, and that what Mr. Brunozzi calls deficiencies in the bonus scheme are unregulated contractual agreements to which Mr. Brunozzi freely bound himself.

A.     *Oregon Overtime Regulation*

OAR 839-020-0030(1) commands that "all work performed in excess of forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay when computed without benefits of commissions, overrides, spiffs, bonuses, tips or similar benefits." OAR 839-020-0030(3)(b)(A) provides the method for calculating the regular rate when an employee is paid based on a piece rate agreement: "[w]here an employee is employed on a piece-rate basis, the regular hourly rate of pay is determined by adding together the total earnings, (excluding commissions, spiffs, bonuses, tips or similar benefits) for the work week and dividing this sum by the number of hours worked in the week for which such compensation is to be paid." OAR 839-020-0030(3)(b)(B) makes it clear that, upon calculating the regular rate of pay, an employee paid based on a piece-rate agreement is entitled to receive an additional 50% of the regular rate for each hour worked over 40 in a week: "[f]or example, an employee who has earned $500 during a 50 hour work week must be paid an additional sum of $50 for the ten overtime hours, for a total of $550 (50 hours at $10 per hour and the ten overtime hours at $5.00 per hour)."

It is undisputed that CCI paid Mr. Brunozzi the required overtime pay for all the overtime hours he worked. All of Mr. Brunozzi's overtime pay related arguments have to do with his belief that his Piece Rate OT Premium should not have been deducted from his bonus; that doing so had the practical impact of diluting the value of his overtime pay. But Oregon law does not require that bonuses be included in overtime pay calculations. And Oregon law leaves unregulated—that is it allows the parties freedom to contract with each other as they see fit—the payment of bonuses. Because Mr. Brunozzi has failed to make any legally significant arguments

5 – OPINION AND ORDER

regarding the Oregon overtime pay regulations, CCI's Motion for Summary Judgment [32] regarding Mr. Brunozzi's First Claim is granted.

### B.    *FLSA Overtime Provision*

Similar to the Oregon regulations, the FLSA provides that a piece-rate employee must be paid an additional 50% of his or her "regular rate" for each hour worked in excess of 40 hours in a single week. The "regular rate" is computed by "adding together total earnings for the workweek" and dividing that sum "by the number of hours worked in the week." 29 C.F.R. § 778.111. The only material difference between the Oregon and federal regulations is that the federal regulations require that all non-discretionary bonuses be included in earnings for the week, whereas the Oregon regulation does not. 29 U.S.C. § 207(e)(3). Expressed in a formula, overtime under the federal regulations is calculated as follows:

**Regular Rate = (Piece Rate Total + Bonus)/Total Hours Worked**

**Overtime Pay = 0.5\*Regular Rate\*(Total Hours Worked – 40)**

An important omission from the FLSA overtime provision is anything that attempts to regulate how bonuses should be calculated. 29 C.F.R. § 778.111. CCI calculates its employees' bonuses according to the following formula:

**Bonus = 70\*(Piece Rate Total/60) – (Piece Rate Total + Piece Rate Premium for Overtime)**[1]

Mr. Brunozzi contends that this bonus scheme violates the FLSA. Mr. Brunozzi argues that by subtracting the Piece Rate Premium for Overtime from the Bonus before calculating the Regular Rate, CCI is illegally deflating the Regular Rate, the key input in the Overtime Pay formula, resulting in illegally depressed Overtime Pay amounts.

---

[1] The Piece Rate Premium for Overtime is calculated according to the following formula:

**Piece Rate Premium for Overtime = 0.5\* (Piece Rate Total/Total Hours Worked)\* Overtime Hours Worked**

6 – OPINION AND ORDER

Mr. Brunozzi's briefing includes a mathematical example that shows that under CCI's bonus scheme the difference in pay between an employee who works 5 hours of overtime and an employee who works 10 hours of overtime is only $0.45. Pl.'s Motion for Partial Summary Judgment [41] at 5–8. What Mr. Brunozzi fails to appreciate is that what he believes is an illegal failure to pay sufficient overtime wages is in fact a perfectly legal result of an agreed upon bonus scheme.

CCI does not dispute the fact that each hour of overtime worked decreases the bonus due, which has the effect of decreasing the Regular Rate, thereby decreasing the ultimate overtime payment that an employee receives. However, CCI correctly argues that the FLSA does not prevent employers and employees from contracting into whatever bonus scheme they desire. The only requirement imposed by the FLSA is that if CCI chooses to pay a bonus, it must include that bonus in its calculation of the Regular Rate. 29 C.F.R. § 778.111. Employers could contract into giving bonuses for showing up to work early and reducing bonuses for leaving early. Employers could contract into giving bonuses for good workplace behavior and reducing bonuses for bad workplace behavior, such as profane or abusive language. An employer could offer no bonus and not violate the FLSA. Employers who ask their employees to agree to substandard bonus structures will be punished by the market for laborers when their employees are snatched up by their competitors who offer superior bonus schemes. The FLSA only requires that whatever bonus results from the agreed upon scheme, whether it be $1,000,000 or $0, be added to the employee's total compensation for calculation of the regular rate. In Mr. Brunozzi's illustration, each employee's overtime pay was calculated in exactly the manner mandated by the FLSA. Both employees received the wages they were owed and they received the requisite overtime pay based on those wages. The fact that the employee who worked 5 additional hours

7 – OPINION AND ORDER

only received an additional $0.45 was not a result of a failure to pay overtime, but rather the result of receiving a lower bonus than the other employee who worked fewer hours.

It is undisputed that CCI complied with the FLSA requirement regarding bonuses. Mr. Brunozzi never alleges that CCI failed to include his bonus in the calculation of his overtime wages; he only argues that the bonus was illegally calculated. As stated above, the FLSA is not concerned with bonus payments beyond the fact that whatever bonus is paid must be included in calculating overtime payments. CCI did just that. I am neither a labor czar nor a majority of Congress and therefore lack the capacity to amend the FLSA to regulate employee bonuses to repair the holes Mr. Brunozzi argues exist in its overtime pay regulations. CCI's Motion for Summary Judgment [32] regarding Mr. Brunozzi's Second Claim is granted.

### C.   *Late Payment of Wages*

Given my findings that Mr. Brunozzi was fully paid all overtime due under Oregon law and the FLSA, Mr. Brunozzi's claims that he was owed additional overtime payments at the time of his termination fall away. I find that Mr. Brunozzi was fully compensated upon his termination by CCI as required by ORS 652.140. CCI's Motion for Summary Judgment [32] regarding Mr. Brunozzi's Fourth Claim is granted.

## II.   Wage Retaliation Claim

CCI's Motion for Summary Judgment [32] also seeks to dispose of Mr. Brunozzi's wage retaliation claim. This claim arises from Mr. Brunozzi's failure to work on April 5, 2014. As a result of not showing up to work on April 5, Mr. Brunozzi was fired. Mr. Brunozzi's complaint alleges that CCI firing him for not attending work on April 5 is merely a pretextual reason for his termination. Mr. Brunozzi argues that he was actually terminated as a result of wage claims he made regarding his overtime pay. Mr. Brunozzi's complaint contains two statutory theories, ORS

652.355 and ORS 659A.199, for his wage retaliation claim. For the reasons set forth below, CCI's Motion for Summary Judgment [32] is granted as to Mr. Brunozzi's wage retaliation claim.

### 1. ORS 652.355

ORS 652.355 states in relevant part, "[a]n employer may not discharge or in any other manner discriminate against an employee because . . . [t]he employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim." Therefore, in order to prevail on this claim, Mr. Brunozzi must prove that: (1) he made, discussed, inquired about, or consulted with an attorney or agency about a wage claim; and (2) that action led to his termination.

Viewing the facts in the light most favorable to Mr. Brunozzi, it appears as though he may have in fact discussed or inquired about a wage claim. In his deposition, Mr. Brunozzi states that he complained about three times to Travis and Reese that he did not believe he was properly being paid overtime. *Brunozzi Depo.*, 80:3–23; 81:12–14. Absent controlling Oregon state case law to the contrary, I would find this evidence sufficient to support a triable issue of fact regarding whether Mr. Brunozzi made the type of wage claim protected by ORS 652.355. However, there is controlling Oregon case law that says these types of complaints are not sufficient to constitute a wage claim.

In *De Bay v. Wild Oats Market, Inc.*, the plaintiff brought a wrongful termination claim under ORS 652.355. 244 Or. App. 443 (2011). Plaintiff wrote a negative report regarding potentially illegal actions taken by his employer's executive management team. *Id.* at 447. As a result of the report, the executive management team cut plaintiff's bonus in half. *Id.* Plaintiff threatened to complain to the board of directors regarding his bonus being improperly reduced.

9 – OPINION AND ORDER

*Id* at 447–448. The executive management team terminated plaintiff's employment to prevent him from informing the board. *Id.* The Oregon Court of Appeals held that this was not sufficient to state a claim under ORS 652.355. *Id.* at 449. The court held that these facts established merely that plaintiff had complained about his wages being cut, not that he had made or discussed a wage claim. *Id.*

Applying this to our case, while Mr. Brunozzi certainly complained about his overtime wages, like the plaintiff in *De Bay*, he did nothing more that could be interpreted as making, discussing, or inquiring about a wage claim. Although Mr. Brunozzi cites a string of cases to rebut the rule in *De Bay*, all of the cases he cites are either non-controlling federal court interpretations of ORS 652.355, or they are Oregon cases that pre-date *De Bay* and are therefore overruled or displaced by *De Bay*. Due to the controlling Oregon case law, I have no option other than to grant CCI's Motion for Summary Judgment [32] with regards to Mr. Brunozzi's ORS 652.355 claim.

### 2. ORS 659A.199

Mr. Brunozzi's second wage retaliation theory is contained in ORS 659A.199. ORS 659A.199 states in relevant part that:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

CCI argues that Mr. Brunozzi cannot prove, under controlling Oregon case law, that he properly reported anything to anyone.

In *Lamson v. Crater Lake Motors, Inc.*, the Oregon Supreme Court held that to "report" wrongdoing within the meaning of that term as used in ORS 659A.230 (which,

10 – OPINION AND ORDER

like ORS 659A.199, makes it an unlawful employment practice to take adverse actions against an employee that "reported" violations of law), the "report" must be made to an "entity with authority to take action to enforce" the law or rules alleged to have been violated. 346 Or. 628, 639–40 (2009). Since *Lamson*, other Oregon courts have held that to constitute a "report" for the purpose of whistleblower statutes, the employee must actually communicate some information to an outside entity with authority to enforce the law. In *Roberts v. Oregon Mutual Insurance Company*, the court of appeals cited *Lamson* for the proposition that a "report" requires informing an entity or person with authority to take action on the complaint. 242 Or. App. 474 (2011). The court relied in part on the plain meaning of the term "report." *Roberts*, 242 Or. App. at 482 (holding that the term "report" as used in Oregon's whistleblower statutes means "to make a charge of misconduct against another," or "to make known to the proper authorities: give notification of" (quoting *Webster's Third New Int'l Dictionary* 645 (unabridged Ed. 2002)); *see also De Bay*, 244 Or. App. at 449 (holding that "[i]nternal complaints, without more, are normally insufficient under Oregon law" to constitute a "report").

      Mr. Brunozzi does not allege that he "reported" anything to anyone or threatened to report anything to anyone. Mr. Brunozzi did not inform any entity with authority to enforce Oregon or federal wage laws that he believed CCI was not properly paying him overtime. Instead, he merely alleges that he complained to his direct supervisors Travis and Reese that he did not believe he was properly being paid overtime. *Brunozzi Depo.*, 80:3–23; 81:12–14. These types of internal complaints are not sufficient to constitute the type of report required for a claim under ORS 659A.199. I therefore grant CCI's Motion

11 – OPINION AND ORDER

for Summary Judgment [32] with regards to Mr. Brunozzi's ORS 659A.199 theory of wage retaliation.

## CONCLUSION

For the foregoing reasons, Mr. Brunozzi's Motion for Partial Summary Judgment [41] is DENIED and CCI's Motion for Summary Judgment [32] is GRANTED. All of Mr. Brunozzi's claims are DISMISSED.

IT IS SO ORDERED.

DATED this   9th   day of July, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge